# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN ALLEN DAVIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:16-cv-00777-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 18, 24, 25) |

## I.

## INTRODUCTION

Plaintiff Ryan Allen Davis ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from depressive disorder, dizzy spells, a pineal cyst, mild snoring and difficulty sleeping, gastroesophageal reflux disease, hyperlipidemia, spastic diplegic cerebral palsy status post bilateral distal femoral rotational osteotomies and bilateral hamstring release. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was found not to be disabled on June 24, 2008. (AR 102-112.) Plaintiff protectively filed a Title XVI application for supplemental security income on May 15, 2012, for the period beginning on June 24, 2008. (AR 121.) Plaintiff's applications were initially denied on October 26, 2012, and denied upon reconsideration on June 26, 2013. (AR 190-194, 199-203.) Plaintiff requested and received a hearing before Administrative Law Judge Danny Pittman ("the ALJ"). Plaintiff appeared for a hearing on July 1, 2013. (AR 26-59.) On November 24, 2014, the ALJ found that Plaintiff had presented new and material evidence warranting a change in his residual functional capacity but that he was not disabled. (AR 7-19.) The Appeals Council denied Plaintiff's request for review on March 30, 2016. (AR 1-3.)

### A. Relevant Hearing Testimony

Plaintiff testified at the July 1, 2013 hearing. (AR 30-.) Plaintiff was born on January 10, 1988. (AR 30.) He was 5 foot 8 or 9 inches tall and weighed about 145 pounds. (AR 30.) Plaintiff was single, had no children and lived with his mother. (AR 30-31.) Plaintiff's mother worked for UPS. (AR 31.) Plaintiff received food stamps. (AR 31.) Plaintiff had a driver's license and drove every day. (AR 31.) It took him three tries to get his driver's license. (AR 47.) Plaintiff smoked about a half a pack of cigarettes a week. (AR 49.) He had no history of alcohol or drug use. (AR 49.0

Plaintiff has a high school education and attended community college for about two years. (AR 31-32.) Plaintiff was studying horticulture in 2010 and 2011 but did not earn a certificate or degree and was not currently taking classes. (AR 32, 44.) Plaintiff took special education classes from first grade through high school. (AR 32.) At community college he was in the disabled person's program and had a secretary to do some of the writing and typing for him. (AR 45.) In school, Plaintiff had a golf cart that took him from class to class. (AR 45.) He was provided with extra time, about 10 minutes, to take tests. (AR 45-46.) He was not given any extra time to complete assignments. (AR 46.) Plaintiff is able to read and write. (AR 32.) Plaintiff missed school maybe two to three times per month due to transportation issues or

because he had severe pain or a restless night and was too tired to get out of bed. (AR 46.)

During the day, Plaintiff will read a book, talk to friends on the phone, look at jobs that might be available, apply for a job, sketch, draw, or find a hobby to do. (AR 50.) Plaintiff has not worked or done volunteer work. (AR 32-33.) Plaintiff has applied for several jobs but has never been hired. (AR 33.) Plaintiff has applied for jobs at Little Caesars, Burger King, and Save Mart over the last two years. (AR 51.) Plaintiff would take a job and try to do it if he was offered one. (AR 50.) He does not believe that he could sustain doing a job every day. (AR 51.) One day Plaintiff will be fine, but if he works a lot one day he might be so sore that he would not be able to get out of bed. (AR 52.) Plaintiff would not be able to do a sedentary job where he was primarily sitting because his concentration is very limited and he gets fatigued during the day. (AR 51.) Plaintiff would not be able to sit for a long time. (AR 51.)

Plaintiff stated that he was unable to work due to the cramping in his legs that has gotten worse. (AR 33.) Plaintiff has pain every day. (AR 49.) It comes and goes in waves of cramping, spasming, soreness, and stiffness. (AR 49.) Because of the severe soreness, Plaintiff suffers from extreme fatigue throughout the day and has to take frequent breaks and nap. (AR 33.) Typically, Plaintiff naps from two to five hours a day depending on how well he slept the night before. (AR 33.) At the time that his prior application was denied, Plaintiff was only taking one to two hour naps three to four times a week. (AR 41.) Plaintiff sometimes wakes up at night with muscle cramps. (AR 33.) Plaintiff gets very tired throughout the day. (AR 33.) Plaintiff is getting more fatigue and pain throughout the day than he used to. (AR 41.)

Plaintiff's leg cramping has become more severe and more frequent. (AR 35.) He has been diagnosed with cerebral palsy. (AR 35.) Due to his cerebral palsy, he has fatigue and muscle pain in both legs from the calf to the upper thigh. (AR 35.) Plaintiff had surgery about three years ago when he was 16. (AR 36.) The surgery was mainly cosmetic, to change the appearance of how Plaintiff walked. (AR 36.) Plaintiff wore leg braces prior to the surgery, but no longer needs them. (AR 47.) They repositioned Plaintiff's femur bones and put plates in them. (AR 48.) The plates were taken out because the doctors thought that might have causing more pain. (AR 48.) Plaintiff was not able to perform better or do more after the surgery. (AR

37.) Plaintiff has a walker and a cane. (AR 48.) He rarely uses them unless he is having a lot of pain or is going to be doing extra walking or standing. (AR 48.) He uses them maybe two or three times a year. (AR 48.)

Plaintiff now has cramping maybe four times per week that lasts fifteen to twenty minutes. (AR 37.) It is more frequent, of longer duration, and more severe than when he was previously denied disability. (AR 37.) Plaintiff is unable to concentrate when he has the cramping. (AR 37.) Plaintiff will sit down, elevate his feet, massage his legs, or might use an ice pack to relieve the cramping. (AR 37.) He might take some ibuprofen or an over-the-counter pain medication. (AR 37.) Depending on the activity, it might increase the cramping. (AR 38.) Standing or walking will increase the cramping. (AR 38.)

Plaintiff is taking Methadone for his pain and it is very effective. (AR 49.) He takes it one time a day. (AR 49.) His dosage has been increased a couple times over the years. (AR 50.)

Since May 2012, Plaintiff is only able to stand a very short period of time. (AR 38.) He can stand no more than a minute before he feels like he needs to sit down. (AR 38.) Plaintiff is able to walk 30 yards. (AR 38.) Plaintiff can sit for thirty to forty-five minutes. (AR 39.) Plaintiff can lift thirty to forty pounds. (AR 39.)

Plaintiff cleans up after himself. (AR 39.) Plaintiff will rinse off dishes and put them in the sink, and cleans off the countertop in the bathroom once a week. (AR 39.) Plaintiff vacuums the house. (AR 40.) He vacuums for ten minutes and then takes a break for ten to fifteen minutes. (AR 40.) Plaintiff finds standing and vacuuming very exhausting. (AR 40.) Plaintiff has no problems bending over and picking things up. (AR 40.) Plaintiff is not able to kneel or squat very well and does not like to climb stairs although he can. (AR 40.) Plaintiff does not like to walk on uneven surfaces because he has poor balance. (AR 40.)

Over a year and a half ago, Plaintiff had a seizure and a sleep study. (AR 41.) He saw a neurologist who did an MRI and they found a tumor on the sleep center of his brain. (AR 41.) They did a sleep study to find out if he had sleep apnea or a sleep disorder. (AR 41.) The doctors ruled out any sleep apnea or sleep disorder. (AR 41.) Plaintiff has quite a few restless

nights with cramping or pain. (AR 41.) Plaintiff was having the same difficulties with leg cramping when his prior application was denied, it is just more severe now. (AR 42.) He is waking up more in the night with restless legs or cramps or spasms. (AR 42.) When he wakes up he stands up to see if that helps or will move into a different position. (AR 43.) When Plaintiff gets leg cramps it does help to elevate his legs. (AR 43.) It takes the pain and fatigue out of his legs quite a bit for a while. (AR 43.)

Plaintiff gets leg cramping when he stands, walks, or sits for long periods of time. (AR 43.) Plaintiff has difficulty focusing and concentrating because of the fatigue and muscle pain. (AR 43.) He gets distracted easily and has difficulty retaining information. (AR 43.) Plaintiff is able to concentrate and focus for fifteen to twenty minutes at a time. (AR 44.) Plaintiff then requires a five to ten minute break. (AR 44.) Plaintiff's concentration is about the same as it was when his prior application was denied. (AR 44.) Plaintiff is not receiving any mental health treatment. (AR 48.)

A vocational expert, Jose Chaparro, also testified at the hearing. (AR 52-57.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since the date of his application, May 15 2012.
- Plaintiff has the following severe impairments: spastic diplegic cerebral palsy status post bilateral distal femoral rotational osteotomies and bilateral hamstring release.
- Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967a except he can occasionally and frequently lift and carry 10 pounds. Plaintiff can stand and walk for four hours and sit for six hours with a break from standing every 30 minutes for stretching. He can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs but he cannot perform balancing or work at unprotected heights.
- Plaintiff has no past relevant work.

- Plaintiff was born on January 10, 1988, and was 24 years old which is defined as a younger individual age 18-44 on the date the application was filed.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not an issue because the claimant does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and residual functional capacity there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability as defined in the Social Security Act since May 15 2012 the date the application was filed.

(AR 12-19.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the

claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in rejecting in part the opinion of his treating

physician, Dr. Bullard. Plaintiff contends that Dr. Bullard's hand written notes support the medical opinion offered and are not inconsistent. Defendant argues that the ALJ properly rejected Dr. Bullard's opinion as inconsistent and that it is not supported by the medical evidence. Plaintiff responds that Defendant cannot rely on reasons that the ALJ did not provide to reject Dr. Bullard's opinion.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

On July 6, 2012, Dr. Bullard completed a physical capacity evaluation. (AR 449.) Dr.

Bullard opined that Plaintiff was able to sit 6 hours in an 8 hour day, stand 1 hour in an 8 hour day, and walk 2 hours in an 8 hour day. (AR 449.) Plaintiff was able to lift and carry up to 10 pounds frequently, 25 pounds occasionally, and never over 25 pounds. (AR 449.) Plaintiff was able to do simple grasping, pushing and pulling of arm controls, fine manipulation, and feeling. (AR 449.) Plaintiff was able to use both feet for repetitive movement as in using and pulling of leg controls. (AR 449.) Plaintiff was able to frequently bend, squat, crawl, climb, kneel, and stoop. (AR 449.) Plaintiff had no restrictions for extreme wet or cold; wetness; humidity; noise; vibration, fume, odor, dust, gases or poor ventilation; and had moderate restrictions in hazards. (AR 449.) Plaintiff had no visual limitations. (AR 449.) Dr. Bullard stated that Plaintiff has an antalgic gait, cannot walk more than 100 yards, stand over 2 to 3 minutes without pain, requires 100 mg. of Methadone for pain control, had plates removed from femur 6 years ago, no additional surgery needed, and had to go to classes in elementary school, high school and college using golf cart. (AR 450.) Dr. Bullard opined that he had no doubt Plaintiff was unable to work fulltime because he lacks the pace and persistence to perform a fulltime job due to his C.P. deformity and large dose of pain meds that he requires. (AR 450.)

While the ALJ must consider all medical evidence, "[t]he treating physician's opinion is not" "necessarily conclusive as to either physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). But, the ALJ may not simply reject the treating physician's opinion on the ultimate issue of disability. Ghanim v. Colvin, 763 F.3d 1154, 1154 (9th Cir. 2014). To reject the contradicted opinion of the treating physician, the ALJ must provide specific and legitimate reasons that are supported by substantial evidence. Id.

The ALJ gave significant weight to the restrictions opined by Dr. Bullard in the medical source statement, but gave limited weight to the conclusion that Plaintiff was unable to perform fulltime work because it was inconsistent with the rest of the medical source statement. (AR 17.)

Initially, at step two in determining the severity of Plaintiff's mental impairments, the ALJ found that Plaintiff's mental impairments were not severe. (AR 12.) In making this determination, the ALJ considered that Plaintiff has experienced depression and anxiety during his parents' divorce, reported experiencing palpations in December 2012 but Xanax relieved his

symptoms. (AR 13.)

On April 4, 2012, Plaintiff reported that his parents had been going through a divorce for four months. (AR 433.) Plaintiff reported loss of appetite, nausea, periodic vomiting, malaise, and fatigue. (AR 433.) He reported that he was nervous and anxious with insomnia. (AR 433.) Plaintiff had a normal physical examination and was diagnosed with nausea and vomiting and epigastric abdominal pain. (AR 434.)

On December 5, 2012, Plaintiff was diagnosed with anxiety was taking Xanax. (AR 645.) On December 28, 2012, Plaintiff was evaluated after complaining of heart palpitations. (AR 466-468.) Plaintiff had a normal examination and an ECG with nonspecific T wave abnormalities. (AR 467.) Plaintiff reported that he was doing better since on Toprol and Xanax. (AR 466.)

The ALJ considered that Plaintiff was diagnosed with anxiety but has had minimal formal mental health treatment, and an examination on February 4, 2013 indicated normal mood and affect. (AR 13, 688.) Plaintiff testified that he is not currently receiving mental health treatment and has never been hospitalized for mental symptoms. (AR 13, 48.)

The ALJ also considered the opinion of Dr. Portnoff who did a consultative examination of Plaintiff on September 7, 2012. (AR 13, 454-458.) Dr. Portnoff noted that Plaintiff reported depression dealing with his parents' divorce and worry stress and panic attacks three times a week. (AR 13, 454.) He said he occasionally had passive suicidal ideas and was participating in counseling. (AR 13, 454.) Plaintiff was taking Methadone, Promethazine, and medical cannabis. (AR 13-14, 455.) Plaintiff said he was in special education classes throughout elementary and high school for attention deficit hyperactivity disorder and learning disabilities and had never worked. (AR 13-14, 455.) Plaintiff said on a typical day he could not do much for very long due to getting easily tired and experiencing leg pain. (AR 14, 455.) Dr. Portnoff noted an awkward gait but no psychomotor abnormalities or abnormal voluntary movements. (AR 14, 455.) Plaintiff's eye contact was good and his facial kinetics were expressive. (AR 14, 455.) Plaintiff's mood was mildly depressed and his immediate recent and past memory was intact. (AR 14, 456.) Plaintiff was able to count backwards from 20 but incorrectly calculated a

simple monetary problem. (AR 14, 456.) Plaintiff's social judgment was found to be inadequate because when asked what he would do if he were the first person in a movie theatre to smell smoke or see fire, he stated, "Alert everyone and get out." (AR 14, 456.) Plaintiff had adequate insight into the fact of his psychiatric symptoms and need for treatment. (AR 14, 457.)

Dr. Portnoff diagnosed Plaintiff with depressive disorder with anxious features and learning disorder and gave him a GAF of 62 indicating mild symptoms or impairment. (AR 14, 457.) Dr. Portnoff noted Plaintiff demonstrated very mild problems with phonetic analysis consistent with dyslexia. (AR 14, 457.) Dr. Portnoff found that Plaintiff had become stressed and depressed due to his parental problems, with non-melancholic depressive features and uncued panic attacks, but he had no psychiatric limitations in his activities of daily living. (AR 457.)

Dr. Portnoff concluded that Plaintiff was able to perform simple and repetitive tasks and was mildly limited in his ability to perform detailed and complex tasks, accept instructions from supervisors, interact with coworkers and the public, and complete a normal workday or workweek without interruptions from a psychiatric condition. (AR 14, 457.) Dr. Portnoff also noted a mild to moderate restriction in Plaintiff's ability to deal with the stress encountered in a competitive work environment. (AR 14, 458.) The ALJ gave this opinion significant weight as it is consistent with the limited mental health treatment and symptoms in the record. (AR 14.)

The ALJ also considered that the State agency psychological consultants A. Garcia M.D. and E. A. Murrillo M.D. concluded that Plaintiff's mental impairment caused only a mild restriction in his activities of daily living, social functioning, and concentration persistence and pace and did not cause any extended episodes of decompensation. (AR 14, 129-130, 156-157.) Both agency consultants found Plaintiff to have no significant limitations other than his ability to carry out detailed instructions which was moderately limited. The ALJ give these opinions significant weight as they are consistent with the overall record. (AR 14.) The ALJ found that because Plaintiff's medically determinable mental impairment causes no more than mild limitation in any of the first three functional areas and no episodes of decompensation which have been of extended duration in the fourth area it is nonsevere. (AR 14.)

To the extent that Dr. Bullard opined that Plaintiff did not have the mental ability to sustain persistence and pace, the ALJ provided legitimate and specific reasons that have substantial support in the medical record to reject such an opinion as discussed at Step 2.

Plaintiff argues that Dr. Bullard's opinion that Plaintiff does not have the physical pace and persistence to perform fulltime work is not inconsistent with the opinion itself. The ALJ gave limited weight to Dr. Bullard's conclusion that the claimant cannot perform fulltime work finding it internally inconsistent with the rest of the medical source statement. (AR 17.)

It is the ALJ's responsibility to consider inconsistencies in a physician opinion and resolve any ambiguity. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999). Here, Plaintiff argues that Dr. Bullard's opinion is not inconsistent to find that he is only able to walk 100 yards without pain and yet can walk 1 hour in an 8 hour day. But Dr. Bullard stated not just that Plaintiff can walk 1 hour in an 8 hour day, but that he can sit 6 hours and stand 2 hours in an 8 hour day. (AR 449.) Dr. Bullard did not indicate that Plaintiff needed to alternate between sitting and standing to relieve pain. (AR 449.) Dr. Bullard also indicated that Plaintiff was able to use his feet for repetitive movement in using and pulling of leg controls. (AR 449.) Dr. Bullard stated that Plaintiff could frequently bend, squat, crawl, climb, kneel, and stoop. (AR 449.) Plaintiff could lift 10 pounds frequently and 25 pounds occasionally. (AR 449.) It is these findings that are inconsistent with Dr. Bullard's opinion that Plaintiff does not have the persistence and pace to perform fulltime work. The ALJ may properly reject a physician's opinion that is internally inconsistent. Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995); Matrunich v. Comm'r of Soc. Sec. Admin., 478 F. App'x 370, 372 (9th Cir. 2012).[2] The ALJ provided a legitimate and specific reason to reject Dr. Bullard's opinion that Plaintiff was unable to perform fulltime work.

///

///

---

[2] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b); see Animal Legal Def. Fund v. Veneman, 490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority").

# V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in rejecting Dr. Bullard's opinion that Plaintiff was unable to perform fulltime work. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Ryan Allen Davis. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**August 15, 2017**__

UNITED STATES MAGISTRATE JUDGE